IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| ·ASBESTOS WORKERS LOCAL 24 MEDICAL FUND ET AL., | * | |
| Plaintiffs, | * | |
| v. | * | Civil No. 25-16-BAH |
| EAST COAST INSULATION, INC., | * | |
| Defendant. | *. | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Plaintiffs Asbestos Workers Local 24 Medical Fund (the "Medical Fund"), Asbestos Workers Local 24 Pension Fund (the "Pension Fund"), Asbestos Workers Local 24 Apprenticeship Fund (the "Apprenticeship Fund") (together, the "Funds"), and the Funds' trustees[1] (collectively, ·"Plaintiffs") brought suit against East Coast Insulation, Inc. ("Defendant") for unpaid contributions pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. ECF 1. Pending before .the Court is Plaintiffs' motion for default judgment (the "Motion"). ECF 8. The Motion includes a memorandum of law and exhibits.[2] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, .the Motion is **GRANTED in part.**

---

[1] The named trustees include Andrew Tomlinson, Scott Grant, Brian S. Cavey, Julio Caicedo, Robert Ciancaglini, Jason Brown, John Hastings, Sean McLaughlin, John Adkins, Benjamin Grant, and Steve Lane. ECF 1, at 1–2.

[2] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

## I.    BACKGROUND

This action arises from Defendant's alleged failure to contribute to the Funds pursuant to a collective bargaining agreement. ECF 1, at 6. The Funds were established under section 302 of the LMRA. *Id.* at 3–5 ¶¶ 5, 7, 9; *see also* 29 U.S.C. §§ 186(c)(5)–(6). Defendant is party to a collective bargaining agreement negotiated by the International Association of Heat and Frost Insulators and Allied Workers, Local 24 and the Insulation Contractors' Association of Washington, D.C. (the "2006 Joint Trade Agreement"). ECF 1, at 5 ¶ 12. Plaintiffs also allege that "[u]pon information and belief, Defendant was also bound to a series of successor Joint Trade Agreements with the most recent being effective for the period April 1, 2022 through September 30, 2025 ('2022 Joint Trade Agreement')." *Id.* at 6 ¶ 13. Additionally, Defendant "executed a participation agreement ... on June 14, 2023" (the "Participation Agreement"), "agreeing to contribute to the Pension Fund and Medical Fund in accordance with the 2022 Joint Trade Agreement." *Id.* The 2006 Joint Trade Agreement, 2022 Joint Trade Agreement, and Participation Agreement are hereinafter referred to as the "Agreements."

According to Plaintiffs, the Agreements establish Defendant's obligation to contribute to the Funds "in a specified amount for each hour that the Defendant is obligated to pay compensation to employees" and "remit contribution reports reflecting hours worked and wages paid."[3] *Id.* ¶ 14, at 9 ¶ 24. Specifically, Defendant is required to "contribute $6.63 through September 30, 2023 and $7.13 thereafter to the Medical Fund and $11.47 to the Pension Fund" and "to forward to the Apprenticeship Fund Trustees $0.65 for each hour worked by Journeymen ($0.30 as an employer

---

[3] Plaintiffs allege that "[p]ayments due to the Funds are calculated separately for each Fund on remittance reports required to be prepared monthly by each contributing employer. This is a self-reporting system and the Funds rely on the honesty and accuracy of the employers in reporting hours worked and paid, and in reporting the contributions owed for work by employees." ECF 1, at 9 ¶ 22.

2

contribution and $0.35 as a deduction from the employee's pay), and $0.81 for each hour worked by Apprentices ($0.55 as an employer contribution and $0.26 as a deduction from the employee's pay)." *Id.* ¶¶ 15–16. Pursuant to the trustees' collection policy, Defendant also agreed to pay interest at the rate of 18% per annum and liquidated damages "assessed in the amount that is the greater of the amount of interest charged or 20% of the delinquent amount" "on all untimely contributions or failures to contribute." *Id.* at 8–9 ¶¶ 21, 25. The collection policy also provides for attorney's fees and costs. *Id.* at 9 ¶ 26.

Plaintiffs allege that Defendant "underpaid and late paid contributions to the Funds for certain months during the period of July 2023 through November 2023." *Id.* at 10 ¶ 28. Defendant also allegedly "failed to submit remittance reports and contributions for the period of December 2023 through October 2024" such that "the funds cannot determine the entire amount of the monthly contributions due" for that period. *Id.* at 9 ¶ 23, at 10 ¶ 30. In sum, Plaintiffs claim "Defendant owes $4,476.37 in unpaid contributions, interest, and liquidated damages to the Funds for the period of July 2023 through November 2023," and "remittance reports and contributions for the months of December 2023 through October 2024." *Id.* ¶¶ 33–34.

Plaintiffs brought the instant complaint on January 2, 2025, and properly served Defendant on January 11, 2025. ECF 1; ECF 3, at 2 (summons returned executed). After Defendant failed to file a responsive pleading, Plaintiffs moved for the Clerk to enter default on February 19, 2025. ECF 4. Default was entered accordingly. ECF 5 (entry of default); ECF 6 (notice of default). Plaintiffs filed a motion for default judgment on January 16, 2026, after the Court ordered Plaintiffs to show cause why the action should not be dismissed for dormancy. ECF 7 (order to show cause); ECF 8 (motion for default judgment); ECF 9 (response to order to show cause). Defendant never responded to the Motion, which is now ripe for review.

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." The Court may conduct hearings or make referrals when necessary to determine the damages, establish the truth of any allegation by evidence, or investigate any other matter. Fed. R. Civ. P. 55(b)(2). Thereafter, the court may enter default judgment at the plaintiff's request and with notice to the defaulting party. *Id.*

Although the United States Court of Appeals for the Fourth Circuit has announced a "strong policy" in favor of deciding cases on their merits, *United States v. Schaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment may be appropriate when a party is unresponsive. *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)). Plaintiff, however, is not automatically entitled to default judgment simply because the defendant has not responded. Rather, entry of default judgment is left to the sound discretion of the court. *See, e.g., Choice Hotels Int'l, Inc. v. Jai Shree Navdurga, LLC*, Civ. No. DKC-11-2893, 2012 WL 5995248, at *1 (D. Md. Nov. 29, 2012); *see also Choice Hotels Int'l, Inc. v. Austin Area Hospitality, Inc.*, Civ. No. TDC-15-0516, 2015 WL 6123523, at *1 (D. Md. Oct. 14, 2015).

With respect to liability, the Court takes as true all well-pleaded facts in the complaint. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). The Court applies the pleading standards announced in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) in the context of default judgments. *See, e.g., Balt. Line Handling Co. v.*

4

*Brophy*, 771 F. Supp. 2d 531, 544 (D. Md. 2011). A complaint that avers bare legal conclusions or "naked assertion[s] devoid of further factual enhancement," is insufficient to award default judgment. *Id.* ("The record lacks any specific allegations of fact that 'show' why those conclusions are warranted." (internal quotation omitted)). The Court "must, therefore, determine whether the well-pleaded allegations in [the] complaint support the relief sought." *Ryan*, 253 F.3d at 780. "The party moving for default judgment must still show that the defaulted party was properly served, . . . and that the 'unchallenged factual allegations constitute a legitimate cause of action.'" *Harris v. Blue Ridge Health Servs., Inc.*, 388 F. Supp. 3d 633, 637–38 (M.D.N.C. 2019) (first citing *Md. State Firemen's Ass'n v. Chaves*, 166 F.R.D. 353, 354 (D. Md. 1996); and then quoting *Agora Fin., LLC v. Samler*, 725 F. Supp. 2d 491, 494 (D. Md. 2010)).

If the complaint avers sufficient facts from which the Court may find liability, the Court next turns to damages. *See Ryan*, 253 F.3d at 780–81. The Court must make an independent determination regarding damages and cannot accept as true factual allegations of damages. *See Lawbaugh*, 359 F. Supp. 2d at 422. Damages are restricted to that which is requested in the complaint. *See* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."). While the Court may conduct an evidentiary hearing to determine damages, it is not required to do so; it may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum. *See Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010) (collecting cases).

## III.    ANALYSIS

Plaintiffs seek default judgment, monetary and injunctive relief, and attorney's fees. ECF 8. The Court addresses two threshold matters before turning to 1) whether Defendant is liable and, 2) if so, what damages it is liable for. First, the Court finds that Defendant was properly served and failed to file a responsive pleading. *See* ECF 3, at 2 (summons returned executed on

Defendant's resident agent, Erick Colindres).[4]  Second, the Court finds it has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 1132(e)(1) and 29 U.S.C. § 185.  The Court now moves to the question of Defendant's liability.

### A.   Liability

Plaintiffs seek default judgment for Defendant's delinquent contributions to the Medical Fund, Pension Fund, and Apprenticeship Fund from July 2023 through October 2024.  ECF 8-1, at 5–6.  Accepting the allegations in the complaint as true, the Court concludes that Plaintiffs have alleged facts sufficient to establish liability under ERISA and the LMRA for Defendant's failure to contribute to the Pension Fund and Medical Fund, but not the Apprenticeship Fund.

This case concerns ERISA, the federal statute governing employee benefit plans.  Congress enacted ERISA to protect "the interests of participants in employee benefit plans and their beneficiaries . . . by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts."  29 U.S.C. § 1001(b).  As relevant here, ERISA provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or.

---

[4] The Court notes that Erick Colindres was not served at the resident agent address listed for East Coast Insulation on Maryland's Business Entity Search (4906 78th Avenue, Hyattsville, Maryland 20784), but was instead personally served at East Coast Insulation's mailing address, which is also listed on the Maryland State Department of Assessments and Taxation's website as Erick Waldemar Colindres' home address in Upper Marlboro, Maryland. *See* ECF 3, at 2.  Nevertheless, "[u]nder both the Federal Rules of Civil Procedure and the Maryland Rules of Procedure, personal delivery to the resident agent of a corporation constitutes effective service of process." *Brown v. Am. Institutes For Rsch.*, 487 F. Supp. 2d 613, 617 (D. Md. 2007) (citing Fed. R. Civ. P. 4(h)(1) and Md. Rule 2-124(d)); *see also Mommaerts v. Hartford Life & Acc. Ins. Co.*, 472 F.3d 967, 968 (7th Cir. 2007) (finding service effective according to the Federal Rules because "service may occur anywhere" a registered agent "may be found").

such agreement." 29 U.S.C. § 1145. "In order to recover delinquent contributions, multi-employer plans are permitted to file a civil action." *Trs. of Plumbers & Gasfitters Loc. 5 Ret. Sav. Fund v. Magothy Mech. LLC*, Civ. No. TDC-25-01249, 2025 WL 3711726, at *4 (D. Md. Dec. 22, 2025) (citing 29 U.S.C. §§ 1132, 1145), *report and recommendation adopted sub nom.*, 2026 WL 473981 (D. Md. Jan. 9, 2026). A multiemployer plan is a plan "to which more than one employer is required to contribute," "which is maintained pursuant to one or more collective bargaining agreements between one or more employee organizations and more than one employer, and" "which satisfies such other requirements" that may be prescribed by regulation. 29 U.S.C. § 1002(37)(A).

Plaintiffs also sue under section 301 of the LMRA, which states: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). "Section 301(a) is the original source of pension fund collection suits in federal court." *Int'l Painters & Allied Trades Indus. Pension Fund v. 3 R Painting & Contracting Co.*, Civ. No. RDB-12-272, 2013 WL 424694, at *6 (D. Md. Jan. 31, 2013). "The LMRA 'does not direct specific damages for violations of a collective bargaining agreement, but grants standing to third-party beneficiaries of such an agreement," like fund trustees, "to bring an action to enforce its terms and seek remedies for its breach.'" *Int'l Painters & Allied Trades Indus. Pension Fund v. Watters Painting, Inc.*, Civ. No. JRR-22-2571, 2023 WL 4759289, at *3 (D. Md. July 26, 2023), *report and recommendation adopted*, No. 1:22-CV-02571-JRR, 2023 WL 12120445 (D. Md. Aug. 14, 2023); *see also 3 R Painting & Contracting Co.*, 2013 WL 424694, at *6 ("Employee benefit

7

trust funds and fund trustees have standing to sue under section 185(a) as third-party beneficiaries of a collective bargaining agreement.").

The Funds are considered multiemployer plans as established by the relevant definition of ERISA because they are plans established by collective bargaining agreements and to which multiple employers are required to contribute to. ECF 1, at 3–4 ¶¶ 5–7. Article X of the 2022 Joint Trade Agreement obligates party employers to pay into the Funds and sets the rate of contribution to each respective fund. *Id.* at 6 ¶¶ 14–16; ECF 1-5, at 18–24. Through the Participation Agreement, Defendant agreed to pay into the Pension Fund and Medical Fund in accordance with the rates in the 2022 Joint Trade Agreement beginning on July 1, 2023. ECF 1, at 6 ¶ 13; ECF 1-6, at 2. Specifically, the Participation Agreement requires Defendant to "contribute to the Local #24 Asbestos Workers Pension Fund and the Asbestos Workers Local #24 Medical Fund the sum provided for in the Union's collective bargaining agreement, for each hour worked or paid for work performed." ECF 1-6, at 2. Defendant agreed to pay this contribution "monthly, on or before the 15th day of each month . . . at the office of the [Pension Fund and Medical Fund]" and that each monthly payment would "include contributions for all payroll periods which ended during the previous month." *Id.* at 3. Plaintiffs allege that their "records reflect that [Defendant] underpaid and late paid contributions to the Funds for certain months during the period of July 2023 through November 2023." ECF 1, at 10 ¶¶ 28, 30. Accordingly, Plaintiffs have established that Defendant is liable for its delinquent contributions to the Pension Fund and Medical Fund.

The Participation Agreement, however, does not obligate Defendant to contribute to the Apprenticeship Fund—any requirement to do so arises from the 2022 Joint Trade Agreement. ECF 1-5, at 23–24; *see also* ECF 1, at 6 ¶ 13. Plaintiffs sufficiently allege that Defendant was a party

8

to the 2006 Joint Trade Agreement and the Participation Agreement. *See* ECF 1, at 5–6 ¶¶ 12–13; ECF 1-4, at 3; ECF 1-6. But relevant to the period in question, Plaintiffs have failed to show that Defendant was a direct party to the 2022 Joint Trade Agreement such that it was required to contribute to the Apprenticeship Fund. Plaintiffs' allegation that Defendant was "bound to a series of successor Joint Trade Agreements" after the 2006 Joint Trade Agreement including, most recently, the 2022 Joint Trade Agreement, is set forth "[u]pon information and belief." ECF 1, at 6 ¶ 13. Plaintiff also provides an affidavit of Renee Parenti, Account Executive for BeneSys, Inc.,[5] in support of default judgment, which makes the same declaration "[u]pon information and belief." ECF 8-2, at 2 ¶ 5 (declaration of Parenti). "Such statements, which are not based on the personal knowledge of the declarant, are not sufficient to prove liability for default judgment." *Abanda v. OurBloc LLC*, Civ. No. BAH-23-1071, 2024 WL 3995139, at *6 (D. Md. Aug. 29, 2024); *see also Educ. Credit Mgmt. Corp. v. Optimum Welding*, 285 F.R.D. 371, 374 (D. Md. 2012) (denying a motion for default judgment where the only proof that the plaintiff had met an element of a claim was a statement made "upon information and belief"); *Balt. Line Handling Co.*, 771 F. Supp. 2d at 543 ("An allegation made 'on information and belief' does 'not serve as a reliable foundation upon which to predicate a final judgment.'" (quoting *Oceanic Trading Corp. v. Vessel Diana*, 423 F.2d 1, 4–5 (2d Cir. 1970))). Moreover, the 2022 Joint Trade Agreement does not show Defendant as a signatory or that Defendant is otherwise bound to it (outside of Defendant's obligations to the Pension Fund and Medical Fund through the Participation Agreement). *See* ECF 1-5, at 77. In contrast, Plaintiffs provide an exhibit showing that Defendant agreed to the 2006 Joint Trade Agreement. ECF 1-4, at 3 (addendum including East Coast Insulation, Inc. as an independent

---

[5] BeneSys, Inc. administers the Funds "under the supervision and direction of the Board of Trustees" of the Funds. ECF 8-2, at 1.

employer party to the agreement, signed on March 21, 2008). Without any indication that Defendant is a party to the 2022 Joint Trade Agreement, other than a statement "upon information and belief," the Court cannot conclude that Defendant was bound to contribute to the Apprenticeship Fund.

Accordingly, Plaintiffs have failed to set forth sufficient evidence regarding Defendant's obligation to contribute to the Apprenticeship Fund to support liability on its (and its trustees') claims. However, default judgment is warranted under ERISA and the LMRA with respect to Defendant's obligation to make contributions to the Medical Fund and Pension Fund. *Cf. Int'l Painters & Allied Trades Indus. Pension Fund v. DLC Corp.*, Civ. No. WDQ-11-1938, 2012 WL 1229491, at *4 (D. Md. Apr. 11, 2012) (finding where a plaintiff established liability under ERISA for breach of a collective bargaining agreement for failure to make contributions, it followed that plaintiff also established liability under the LMRA (citing *Hudson Cnty. Carpenters Local Union No. 6 v. V.S.R. Constr. Corp.*, 127 F.Supp.2d 565, 568 (D.N.J.2000) ("It is well-established that a failure to make contributions to a union trust fund as required by a [CBA] constitutes a violation of ERISA § 515 and a violation of LMRA § 301."))).

**B.   Damages**

Having established Defendant's liability to the Medical Fund, Pension Fund, and their trustees, the Court must next determine damages. Plaintiff seeks both monetary damages and injunctive relief. ERISA provides that Plaintiffs may recover "(1) the unpaid contributions; (2) interest on the unpaid contributions; (3) liquidated damages; (4) reasonable attorney's fees and costs of the action; and (5) 'such other legal or equitable relief as the court deems appropriate.'" *3 R Painting & Contracting Co.*, 2013 WL 424694, at *6 (quoting 29 U.S.C. § 1132(g)(2)). "Under ERISA, the court has discretionary authority to grant injunctive relief when doing so is necessary to protect the rights of fund participants and beneficiaries." *Nat'l Elec. Ben. Fund v. Landers*

*Enters., LLC*, Civ. No. PWG-14-0140, 2014 WL 3510227, at \*7 (D. Md. July 11, 2014) (citing *Trs. of Washington Area Carpenters' Pension & Ret. Fund v. Mergentime Corp.*, 743 F. Supp. 422, 428 (D. Md. 1990)). "A plaintiff requesting injunctive relief must show that it is in need of injunctive or 'other appropriate equitable relief' to remedy the breach, and that adequate remedy is otherwise unavailable." *Id.* (quoting *Phillips v. Brink's Co.*, 632 F. Supp. 2d 563, 575 (W.D. Va. 2009)).

"On default judgment, the Court may award damages without a hearing, but only if the record supports the damages requested." *Su v. iProcess Online, Inc.*, Civ. No. BAH-24-61, 2024 WL 4932657, at \*5 (D. Md. Dec. 2, 2024) (citing *Clancy v. Skyline Grill, LLC*, Civ. No. ELH-12-1598, 2012 WL 5409733, at \*5 (D. Md. Nov. 5, 2012)); *see also Monge*, 751 F. Supp. at 795 (collecting cases in which damages were awarded after an entry of default judgment and without a hearing, based on affidavits, electronic records, printouts, invoices, or other documentary evidence). The Court must be able to "review[] competent evidence in support of this figure." *See 3 R Painting & Contracting Co.*, 2013 WL 424694, at \*7 (awarding $114,269.54 in unpaid contributions where the Assistant to the Fund Administrator attested to, *and the Court verified*, the Plaintiff's calculation, as illustrated in the affidavit).

Plaintiffs claim that contributions to the Funds, which are based on the hours worked by Defendant's employees, "are calculated separately for each Fund on remittance reports required to be prepared monthly by each contributing employer." ECF 1, at 9. Through the Participation Agreement, Defendant is required to contribute to the Medical Fund at the rate of $6.63 for each hour worked by a mechanic or journeyman up until October 1, 2023, when the rate is increased to $7.13 per hour. ECF 8-2, at 97. To the Pension Fund, Defendant agreed to contribute at a rate of $11.47 per hour for mechanics. *Id.* at 99.

11

ERISA, the Medical Fund trust agreement, the Pension Fund trust agreement, and the collection policy established by the trustees, all provide for collection of interest and liquidated damages for delinquent contributions. 29 U.S.C. § 1132(g)(2); ECF 8-1, at 175 (Medical Trust), at 200 (Pension Trust), at 252 (collection policy). Through the Participation Agreement, Defendant agreed to "all the terms of the Trust Agreements creating the [Pension Fund] and [Medical Fund]," including "all of the rules and regulations heretofore and hereafter adopted by the Trustees of said Trust Funds pursuant to said Trust Agreemements." ECF 8-2, at 157. The trustees' collection policy, which "establishes the steps and responsibilities of the Trustees," sets the rates of interest and liquidated damages, specifically "interest on any unpaid or late paid amounts at the rate of 18% per annum from the date due until the payment is actually received, and liquidated damages assessed in the amount that is the greater of the amount of interest charged or 20% of the delinquent amount." ECF 8-1, at 5; ECF 8-2, at 252.

Accordingly, Plaintiffs allege that Defendant owes the following sums for July 2023 through November 2023:

- To the Pension Fund: $1,957 in contributions, $251.08 in interest, and $1,137.83 in liquidated damages; and
- To the Medical Fund: $136 in contributions, $165.22 in interest, and $750.09 in liquidated damages.

*See* ECF 1, at 10 ¶ 29. Parenti's declaration asserts the same. ECF 8-2, at 5–6 ¶¶ 18–19.

Although Plaintiffs have sufficiently established the types of damages owed, the record support for Plaintiffs' precise damages *calculation* is thin. Parenti's declaration provides nothing more than a conclusory assertion of the damages sum and is simply a restatement of the total amounts alleged in the complaint and Motion. *Compare* ECF 1, at 10 ¶ 29, *with* ECF 8-2, at 5–6 ¶ 18. And although Plaintiffs provide sufficient evidence of the rates of contribution to the Pension Fund and Medical Fund, the declaration does not provide any detail regarding the hours worked

12

by Defendant's employees for the Court to independently verify the legitimacy of the damages calculation. To credibly establish damages, Plaintiffs must provide more than conclusory assertions of the total amounts owed. *Cf. Nat'l Elec. Benefit Fund. v. Wire to Water Elec. of New York, Inc.*, Civ. No. TDC-19-3003, 2020 WL 1933625, at *4 (D. Md. Apr. 21, 2020) (awarding requested damages sum where, in support of Plaintiff's request, Plaintiff submitted (1) a "detailed affidavit with exhibits"; (2) a Letter of Assent; (3) the Collective Bargaining Agreement; (4) a Trust Agreement; and (5) a Delinquency Report).

Accordingly, the Court concludes that Parenti's declaration is not sufficiently detailed, and the Motion does not include adequate supporting documentation to award damages on this record. "Without more, the Court has no competent evidence to review in support of the requested amount and cannot verify Plaintiff[s'] calculation." *Su*, 2024 WL 4932657, at *6. The Court declines to award the requested relief at this time but will provide the Medical Fund and Pension Fund with one opportunity to supplement the record in support of the damages request. If Plaintiffs credibly establish the damages amount, the Court will then consider the request for injunctive relief and attorney's fees.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' motion for default judgment is **GRANTED in part** and **DENIED in part**. Liability is established as to the Medical Fund and Pension Fund. The request for monetary and injunctive relief is DENIED without prejudice. The Medical Fund and Pension Fund, and their trustees, are granted one opportunity to supplement the record on damages within thirty (30) days. The Court will DEFER resolution of the request for attorney's fees. Default judgment is DENIED as to the Apprenticeship Fund and its trustees.

A separate implementing order will issue.


Dated: <u>April 13, 2026</u>                                    <u>        /s/        </u>
                                                        Brendan A. Hurson
                                                        United States District Judge

14